STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
(for court filings only)
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200

Presented on behalf of Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| RANDOLPH C. FRANKLIN,<br><br>Plaintiff,<br><br>v.<br><br>**DOMINIC CHOI, MICHEL REY MOORE, WILLIAM J. BRIGGS II, ERROLL SOUTHERS, RASHA GERGES SHIELDS, MARIA LOU CALANCHE, FABIAN GARCIA HUMBERTO A. NAJERA, and 10 UNKNOWN NAMED DEFENDANTS, 1-10,**<br><br>Defendants. | **COMPLAINT**<br><br>(Police Brutality and Thuggery, Malicious Prosecution, for Damages for Civil Rights Violations, 42 U.S.C. § 1983, and for RICO Violations)<br><br>**JURY DEMAND** |
| --- | --- |

Plaintiff makes the following allegations, in support of the this complaint:

### JURISDICTION AND VENUE

1. Plaintiff, **RANDOLPH C. FRANKLIN**, is a Black person who asserts federal claims, under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) (civil rights), and 18 U.S.C.

1

§ 1961-64 (RICO) against defendants, subject matter jurisdiction lies pursuant to 28 U.S.C. § 1331 of the federal claims, and defendants' conduct affects and interferes with interstate commerce.

2. The matters that are the bases for this action occurred in Los Angeles County, California, and in the City of Los Angeles, and therefore venue lies in the United States District Court for the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

3. Plaintiff is a person who has been subject to Los Angeles Police Department ("LAPD") police brutality and thuggery and malicious prosecution, and defendants are **DOMINIC CHOI, LAPD** interim chief of police, **MICHEL REY MOORE, WILLIAM J. BRIGGS II, ERROLL SOUTHERS, RASHA GERGES SHIELDS, MARIA LOU CALANCHE, FABIAN GARCIA,** all of whom are members of the Los Angeles Board of Police Commissioners, and **HUMBERTO A. NAJERA,**[1] who is an Hispanic LAPD officer, participated in the wrongful acts alleged hereinbelow, and whose conduct is culpable, and whose unknown names will be replaced by their true identities when those true identities are learned, or are persons and/or entities whose true names presently are unknown, and who may have engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow. All defendants acted under color of law, and all engaged in the same wrongful conduct, by participating in, facilitating, and making the decisions that resulted in the wrongs hereinbelow alleged.

4. Defendants, each and all are sued in both their individual and official capacities, when they have an official capacity, but only in their official capacities,

---

[1] *See* Exhibit 1 hereto.

2

for the claims made under *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 657 (1978), with respect to which defendants are sued in their official capacities only, and in their individual capacities only for the RICO violations hereinbelow alleged.

5. Plaintiff is a person who has been brutalized and thugged and maliciously prosecuted and subjected to both constitutional violations and RICO violations by defendants.

6. Defendants and each of them play and played some material role in the acts and/or omissions alleged hereinbelow and in the setting of policies of the LAPD, and their unconstitutional policies, practices, procedures, and customs were the moving forces behind the constitutional violations inflicted on plaintiff.

## ALLEGATIONS COMMON TO EACH COUNT

7. Each and every allegation set forth in each and every averment herein is incorporated by this reference in each and every other averment and allegation of this pleading.

8. All acts and/or omissions perpetrated and/or engaged in by each defendant, in their individual capacities, were done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive and/or intent, in disregard of the rights of plaintiffs and class members, and in clear violation of the federal Constitution and of the California Constitution, and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit.

9. On July 9, 2024, defendant Najera, without probable cause to do so, initiated the false criminal charge of violation of Cal. Penal Code § 25850(C) (possession of a loaded firearm not registered in plaintiff's name) against plaintiff, plaintiff as a result thereof was held without bail until July 12, when the charge

3

against plaintiff was dismissed, and Najera acted with malice. Najera also caused plaintiff's firearm to be confiscated and it has not been returned. Plaintiff was harmed by spending several days in pre-trial detention.

9a. Hispanic LAPD officers traditionally have held unfounded biases against current and former LAPD officers.

10. The non-LAPD defendants each and all are legally liable for all of this conduct because, with deliberate indifference, they caused it, ratified it, condoned it, or otherwise made it possible, by their actions and/or inactions, and caused and/or create LAPD policies, practices, procedures, and/or customs, that caused the LAPD officers' unconstitutional conduct, and because all of them failed in their duty to train police in proper, allowable, constitutional policing and jail procedures, and their failures amounted to deliberate indifference to the rights of persons with whom the police come into contact.

## COUNT ONE
(Against All Defendants, 42 U.S.C. § 1983)

11. Plaintiff realleges specifically the allegations set forth in averments 9 & 10, hereinabove, and, by virtue thereof, all defendants are liable to plaintiff, pursuant to 42 U.S.C. 1983, for violation of plaintiff's Fourth Amendment rights, not to be subjected to unreasonable searches, seizures, stops, arrests, and baseless criminal prosecution.

12. The non-officer city officials who are defendants are responsible for the Fourth Amendment violations committed by the police officer defendants because the mayor, members of the city council, and members of the board of police commissioners each and all set the policies and accepted the customs of the LAPD, among which were unconstitutional, brutalization of citizens, and plaintiff herein was subjected to such brutalization and thuggery.

13. The non-officer city officials who are defendants are responsible for the Fourth Amendment violations committed by the police officer defendants because

4

the mayor, city council members, and the chief of police who set the policies and accepted the customs of the police department, among which were unconstitutional, pretextual stops of motorists, and plaintiff herein was subjected to a pretextual, vehicle stop, that has been ratified by these defendants.

## COUNT TWO
### (Against All Defendants for Conspiracy Under § 1983)

14. Plaintiff realleges specifically hereat the allegations set forth at averments nine through 13, hereinabove, and by virtue thereof, all defendants also are liable to plaintiff for conspiracy to violate Fourth Amendment and Fourteenth Amendment rights, pursuant to § 1983, because they had an agreement and/or understanding that the wrongs perpetrated would be perpetrated, and then they were perpetrated, by the LAPD defendants beating the crap out of plaintiff.

15. More specifically, the members of the Board of Police Commissioners and chiefs of police for many years, have been aware of and permit and condone police misconduct, so that LAPD officers free to violate the Constitution's Fourth and Fourteenth Amendments, and here did so, and these defendants failed to investigate and covered-up what occurred in this matter on July 9, and thereby approved of it, condoned it, acquiesced in it, and ratified it, with a meeting of their minds that this kind of unconstitutional conduct would occur.

16. The non-police defendants are aware that LAPD officers use pretextual charges based on hunches, that it is unconstitutional for police action to be based on a hunch or race, and have approved of hunch-stops and charges based on race, condoned them, and ratified them, as they did in this instance, and also racially profile.

## COUNT THREE
### (Against All Defendants, Under Sec. 1983, *Monell*)

17. "[When] the complaint plausibly alleges a policy, custom, or practice leading to that violation[, s]ee *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.

1937, 173 L.Ed.2d 868 (2009)[,] [and] Plaintiffs' allegations amount to . . . more than an 'isolated or sporadic incident[ ]' that . . . forms the basis f *Monell* liability for an improper custom. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)." *Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2001). Herein, all defendants are liable to all plaintiff because they had and have, and foster, policies, practices, procedures, and customs of Fourth and Fourteenth Amendment violations by members of LAPD, which policies, *etc.*, in violation of the these Amendments, were the moving forces that caused the violation of the plaintiff's rights, as alleged herein, and, also the supervisor defendants are liable because they have a custom of improperly indemnifying, and of conspiring to indemnify, LAPD officers for punitive damages assessed against those deputies by juries in civil rights cases, or settling those cases to avoid having to vote on whether or not to make such indemnifications, because that practice was a moving force that caused the violations of the plaintiff's rights as alleged herein.

18. Additionally, the board of police commissioner and police cheif defendants for many years have been aware of and permit and condone that they permit their police chiefs to not properly administer the LAPD, so that police feel free and licensed to violate the Constitution and here did so, and these defendants have failed to investigate what occurred in this matter on July 9, 2024, and to take action against as a result of it, the chief for covering-up the incident, and thereby approved of it, condoned it, approved of it, and ratified it, with a meeting of their minds that this would occur.

19. The non-police-officer defendants are aware that LAPD officers customarily violate persons' constitutional rights, often by filing malicious prosecution charges, that this is unconstitutional, and they have approved of such conduct and condoned it and ratified it, as they have done in this instance.

20. This is their policy and custom, to do so.

//

//

## COUNT FOUR
### (Against All Defendants Under § 1985(3))

21. All defendants agreed and/or understood and conspired with at least one other police officer defendant to deprive a plaintiff of the equal protection of the laws, in violation of 42 U.S.C. 1985(3), based on a racially-motivated bias against a plaintiff; and the official capacity defendants could have, but did not, prevent the violations of Section 1985(3).

22. Therefore, any police officer defendant is liable to plaintiff under Section 1985(3), and any official capacity defendant who had the power and/or opportunity and/or duty to prevent, but who failed to prevent any violation of Section 1985(3), is liable to any plaintiff under 42 U.S.C.1986.

23. Any official capacity defendant is liable to any plaintiff for all wrongs alleged in this pleading pursuant to *Monell, supra.* This alleged conspiracy is separate from the simple, non-racially-based conspiracy alleged in Count Two, hereinabove.

## COUNT FIVE
### (Against All Defendants Under § 1983)

24. Defendants engaged in conduct to cover-up the July 9, 2024, and thereby interfered with plaintiff's federal constitutional right of access to the federal courts.

## COUNT SIX
### (Violation of *Jus Cogens* International Law)

25. Defendants' actions, as set forth hereinabove, are in clear violation of and are prohibited by the *jus cogens,* peremptory norms of international law that, among other things, prohibit unlawful takings into custody by government.

26. Such *jus cogens,* peremptory norms are the law of the land in the United States of America, and plaintiff and class members are entitled to damages for the harm caused to them by defendants' violations of *jus cogens*, peremptory norms, and to declaratory and injunctive relief, because the Ninth Circuit, in *Siderman v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992), has held these prohibitions to be *jus cogens* norms. That is, plaintiff and class members claim defendants are liable to plaintiff and class members for subjecting them unlawful detentions, in violation of *jus cogens* peremptory norms of international law, whose violation, in turn, is a violation of the law of the United States of America, under the Supremacy Clause of the United States Constitution.

//

## COUNT SEVEN
(Violation of *Jus Dispositivum* International Law)

27. Defendants' actions, as set forth hereinabove, are in clear violation of the *jus dispositivum* treaty obligations entered into by the United States of America, and which obligations, pursuant to Article VI, Clause 2 of the United States Constitution (the Supremacy Clause), are "the supreme law of the land . . . any thing in the Constitution or laws of any state to the contrary notwithstanding."

28. The specific treaties whose provisions prohibit unlawful detentions and cruel and unusual punishments, to which the United States of America is a signatory, and whose provisions were violated by defendants, are: Universal Declaration of Human Rights, G.A. Res. 217 (A) (III), U.N. Doc. A/810 at 71 (1948); the Declaration on the Protection of All Persons from Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452 (1975); Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, annex 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51, art. 1 (1984); Body of Principles for the Protection of all Persons under Any Form of Detention or Imprisonment, G.A.

8

Res. 43/173, 43 U.N. GAOR Supp. (No. 49), U.N. Doc. A/43/49, at 297, Principle 5 (1988); the American Convention on Human Rights, O.A.S. Treaty Series No. 36, at 1, OEA/Ser. L./V/II.23 doc. Rev. 2, Art. 5); International Covenant on Civil and Political Rights, G.A. Res. 2200A (XXI), 21 U.N. GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, Art. 7; and, the European Convention for the Protection of Human Rights and Fundamental Freedoms, 213 U.N.T.S. 222, Art. 3, and by engaging in the conduct alleged, defendants violated those treaties and conventions, and thereby violated the laws of the United States of America, through the Supremacy Clause.

29. By virtue of the violations of the provisions of these treaties, plaintiff and class members are entitled to recover nominal damages and punitive damages from defendants, and to declaratory and injunctive relief.

30.-124. Reserved.

## COUNT EIGHT
(Against All Defendants Under § 1983, For Violations of the Fourth and Fourteenth Amendments For Plaintiff's Malicious Prosecution)

125. Defendant Najera maliciously initiated and caused plaintiff to be charged with crimes, with no probable cause to do so, the charges against plaintiff were dismissed, and plaintiff was harmed by the false prosecution, and therefore, defendants are liable to plaintiff for false and malicious prosecution.

126.-141. Reserved.

## COUNT NINE
(Against All Defendants, RICO)

142. By doing the things alleged hereinabove, and/or aiding or abetting them, defendants thereby engaged in and committed the related RICO predicate acts, with similar purposes, results, participants, victims, and methods of commission, over a long and continuing period of time, going back at least 45 years, with a threat of continued racketeering activity of obstruction of justice, and

9

continue to commit obstruction of justice, all by using instrumentalities of interstate commerce to accomplish their crimes, and thereby are liable under the civil RICO statute.

## Rico Predicate Acts

143. On July 9, 2024, defendant Najera caused plaintiff's gun to be taken from him, and thus stole his personal property and attempted to extort him out of that property, and the gun never was returned to plaintiff.

144. The LAPD officer's theft of plaintiffs' property, was pursuant to LAPD custom and was condoned, approved of, and ratified by the non-LAPD officer defendants.

145. **Obstruction of Justice** The obstruction of justice occurred by defendants inflicting constitutional violations on plaintiff and by preventing plaintiff from exercising his federal constitutional rights, all as set forth hereinabove.

146. Each defendant, in his/her own right, and all defendants together, collectively, as well as their employees, who work in and for the City of Los Angeles, are all enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C. 1961(4), and therefore are RICO enterprises.

146a. All of the defendants are a separate enterprise, like a true mafia, extortion/protection-type, racket-enterprise.

147. Each and all of defendants' activities affect interstate commerce, as well as intrastate and interstate travel.

148. Each defendant received and receives income, directly and/or indirectly, by way of insurance premiums, salary, compensation, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, pensions, *etc.*, from the pattern of racketeering activity alleged herein, and used and uses that income in the acquisition of an interest in and/or operation of the

enterprise, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

149.  Defendants conducted and/or participated, and continue to conduct and participate in, said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

150. The pattern of racketeering activities included, and continues to include, a continuous pattern and practice potentially involving activities, including the RICO predicates of fraud, extortion, fraudulent concealment, and obstruction of justice, and defendants' defense of the instant action is and will continue to be and will be a continuation and a part of its RICO schemes, so that those who may participate in the defense, such as defendant Kim, of this action may make themselves liable under RICO.

151. Defendants' associated-in-fact enterprises constitute a present and continuing threat of harm and additional RICO violations.

152. The enterprises' activities have occurred on more than one, and on many thousands of occasions, over at least the past 35 years and have been done on numerous occasions and constitute at least a thousand separate acts, as set forth hereinabove, not including the acts that will be included as part of the defense of the instant action.

153. At least five RICO predicate acts have occurred.

154. The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, extortion, and obstruction of justice, and they pose a threat of continued criminal activity, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by

11

their common characteristics and participants, they are not isolated events, but are both continuous and systemic, and each and all constitute a continuing pattern of racketeering activity and constitute a long term threat of continuing racketeering activity.

155. The activities led to defendants' control of and acquisition over the enterprises and resulted in the injuries to plaintiff and class members, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

156. By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial employees and/or officers and/or agents of defendants engaged in and condoned racketeering activities.

157. The willful and/or negligent mismanagement of the enterprises, with knowledge by defendants charged with management, and potentially other defendants, that they were and continue to be operated as a RICO enterprises, directly caused the harm to plaintiff and to class members, as alleged herein.

158. The enterprises are RICO enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

159. Each defendant unlawfully conspired with others, including other defendants, by understanding and agreeing to do, and having a meeting of the minds, and taking overt actions to support the matters hereinabove alleged, to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, continued and continue to do so ,with the aid and assistance of co-conspirators

12

**WHEREFORE**, plaintiff requests relief against each defendant as follows:

1. Compensatory damages of $10,000,000, and trebling under RICO;

2. Punitive damages on all non-*Monell* claims, in sums to be determined by a jury, and as a percentage of the net worth of each defendant, in sums sufficient to deter future misconduct, and not less than $10,000,000 per defendant;

4. The costs of action and interest;

5. Attorneys' fees; and,

6. Such other relief as is just and proper.

### JURY DEMAND

Plaintiff demands trial by jury of all issues.

**YAGMAN + REICHMANN, LLP**

By:  /s/  Stephen Yagman
     **STEPHEN YAGMAN**

13

# EXHIBIT 1

# WATCH THE WATCHERS

A PROJECT BY THE STOP LAPD SPYING COALITION

# HUMBERTO A NAJERA



Serial Number: 32688

Email: 32688@lapd.online

Ethnicity: Hispanic

Gender: Male

Division: Transit Services Group

Rank: Sergeant II

Year Of Hire: 1996

**2022 PAYMENTS**

- **Regular Pay: $148,097.80**
- **Overtime Pay: $163,359.93**
- **Other Pay: $15,640.21**
- **Health Benefits: $20,489.01**
- **Retirement Benefits: $69,383.82**

All the information on this page was made public by the City of Los Angeles in accordance with the California Public Records Act.

From January 13, 2023, to April 6, 2023, you could download an LAPD personnel roster listing the **Serial Number**, **Ethnicity**, **Gender**, **Division**, **Rank**, and **Year of Hire** data from the website where city agencies publish public records. That file now appears to be deleted, but years of similar data can be found by searching for terms like "roster" or "personnel" on that same website.

**Serial Number** is a unique LAPD identifier for every officer. This is different from an officer's badge number. We've filed a public records request with LAPD asking for badge numbers. We plan to add those here when we get them. **Email Address** is pieced together from the standard LAPD email format of [Serial Number]@lapd.online.

**2022 Payments** are the City Controller's data of payments made to individual LAPD employees in Calendar Year 2022 (January to December). Our understanding is that these aren't always an officer's full wages due to factors such as hire

date, retirement date, or deductions of tax-free income for benefits spending.

## A COUNTER-SURVEILLANCE PRACTICE

## READ MORE HERE